## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

SUSANNA LIBRANDI,

    *Plaintiff*,

    v.

ALEXION PHARMACEUTICALS, INC.,

    *Defendant*.

No. 3:22cv1126(MPS)

### RULING ON MOTION TO DISMISS

In response to the COVID-19 pandemic, Susanna Librandi's employer, Alexion Pharmaceuticals, Inc., required its employees to be vaccinated against COVID-19. Employees could request an exemption to the vaccination mandate; if the employee's request was granted, the employee was required to test weekly for coronavirus. Librandi initially requested, and was granted, a religious exemption but she later withdrew her request for an exemption. As a result, she was required to comply with Alexion's mandatory COVID-19 vaccination requirement. When Librandi failed to do so, Alexion terminated her employment for noncompliance with its COVID-19 policy. Librandi, proceeding *pro se*, filed suit against Alexion alleging that its COVID-19 policy violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*. Specifically, she claims that under its COVID-19 policy, Alexion "regarded her as disabled with a contagious disease with an impaired immune system" and that Alexion "made a record of such disability." Am. Compl., Count 1; ECF No. 9 ¶¶ 13, 46. She also alleges that Alexion retaliated against her "by seeking to impose its 'Covid-19 Policy' upon [her]." Count 2; *Id.* ¶ 156. Alexion has moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF No. 26. I have carefully considered the complaint and its attachments and the parties' briefs, and I find that oral argument will not aid the decisional process. For the reasons that follow, the motion to dismiss is granted.

I.    **BACKGROUND**[1]

Librandi was employed by Alexion from June 2008 until September 14, 2022.  ECF No. 9 ¶ 27.  In July 2021, Alexion was acquired by AstraZeneca.  *Id.* ¶ 28.  In August 2021, Alexion implemented a COVID-19 policy.  *Id.*; ECF No. 9-1 at 2.  In a memorandum to employees, Alexion stated that as part of its "return to the workplace" plan, employees would be required to be vaccinated against COVID-19.  ECF No. 9-1 at 2.  Alexion would provide accommodations for employees who were unable to be vaccinated due to medical, religious, or other restrictions.  Those employees would be required to test weekly for COVID-19.  *Id.*  Alexion instructed employees to disclose their vaccination status by September 3, 2021.  ECF No. 9 ¶ 29; ECF No. 9-1 at 9.

Librandi opposed Alexion's COVID-19 policy "partly because the practices were unrelated to the performance of her essential job functions."[2]  ECF No. 9 ¶ 24.  She "made inquiries regarding the protections a 'religious exemption' would give her against [Alexion's] COVID-19 policy."  *Id.* ¶ 31.  She also was concerned about the security of her health information because she had to send many emails outside the "supposedly secure" portal being used to collect vaccination information.  *Id.* ¶ 32.  She completed a form requesting a religious accommodation "related to vaccination or disclosure of vaccination status."  ECF No. 9-1 at 19.  On December 21, 2021, Alexion notified Librandi that it would exempt her until January 21, 2022 from its requirement that she provide proof of vaccination, complete weekly PCR testing, and wear a mask "so long as [she] conduct[ed] all work fully remotely."  ECF No. 9-1 at 27.  Alexion told her that it "cannot agree to an accommodation allowing in-person interactions in your capacity as an Alexion employee without

[1] The facts, which I accept as true for the purposes of this motion, are drawn from the amended complaint (ECF No. 9), the attached exhibits, and the documents incorporated by reference in the complaint. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (On a Rule 12(b)(6) motion to dismiss, a court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on [such a motion], in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." )

[2] Librandi claims that the vaccination requirement is illogical, ECF No. 9 ¶ 126, and that the vaccines are experimental. *Id.* ¶ 106.  See ECF No. 36 at 22-23.  I need not address these assertions to resolve the pending motion.

compliance with Alexion's vaccination, masking, or testing requirements." *Id.* Alexion subsequently extended the work from home requirement through February 21, 2022 and then through April 30, 2022.  ECF No. 9 ¶ 37.  In March and April 2022, because she was not permitted to be on site, Librandi missed team meetings and work-related social gatherings, which had a negative impact on her career advancement.  *Id.* ¶ 38.

On May 6, 2022, Alexion notified Librandi that "[w]orking fully remotely is no longer feasible and you may not come on-site as an unvaccinated employee unless you maintain compliance with weekly PCR testing obligations."  ECF No. 9-1 at 31.  Alexion instructed her to "begin reporting to [her] assigned site location regularly beginning June 6, 2022."  *Id.* at 32.

On May 19, 2022, Librandi wrote a letter to Alexion that stated in pertinent part:

> I am documenting that Alexion Pharmaceuticals (Alexion) is <u>regarding me as having a disability</u> (an impaired immune system and an impaired respiratory system) without any diagnosis or individualized assessment and has also <u>made a record of such disability</u> by mis-classifying me as having, in ADA terms, a mental or physical impairment that substantially limits one or more major life activities.
>
> Alexion is also coercing me to submit to medical examinations and interventions as accommodations ("mitigation measures") without any informed consent. It has been extremely difficult to perform my employment duties because of these interruptions and harassment. . . .
>
> Regarding the mitigation measures such as vaccines and submitting to medical examinations, I <u>am not required to accept these or any mitigation measures under Title I of the ADA 29 CFR Part 1630.9(d)</u>…. My employer is responding to me as if I have an actual or potential contagious disease. I demand to review the records the employer has relied upon to determine that I am a direct threat. If there is some legal authority that overrides my rights under the ADA, please provide me with a legal citation…. Because Alexion is regarding me as disabled, I am invoking my rights under the Americans with Disabilities Act as a qualified individual with a disability.

ECF No. 9-1 at 34.  In a second letter to Alexion, also dated May 19, 2022, Librandi wrote:

> Alexion regards me as disabled with an impaired immune system and an impaired respiratory system. I have been given the coercive, threatening, and intimidating choice to be tested or suffer adverse employment action, which clearly shows that my employer regards me as disabled by classifying me as a *potential or actual*

*source* of COVID-19. Alexion regards me as disabled through its classification of me as *unvaccinated*, and the affirming action of regarding me as unvaccinated is that I will suffer adverse employment action if I don't comply with its testing accommodation. These factors are based solely upon my employer[']s perception of my physical condition.

ECF No. 9-1 at 38-39.   Librandi stated she was "withdrawing [her] request for religious exemption" and "claiming [her] rights under the ADA." *Id.* at 39.  Librandi further stated that she "was declining the accommodation of undertaking any of your mitigation measures including testing or other medical interventions/assessments because I am claiming my right to informed consent; my right of refusal under Emergency Use Authorization guidelines; and my protected rights under the ADA, because my employer regards me as disabled, so I qualify for the protection of the ADA." *Id.* at 40.

On May 24, 2022, Librandi emailed Alexion that there "is some confusion regarding the notices I sent on May 19, 2022.  As the notices state, it is Alexion by means of its covid policy that is regarding me as an infectious threat, or in ADA terms, Alexion is regarding me as having a disability[.]" *Id.* at 52.

On May 27, 2022, Alexion told Librandi that "[t]o be entitled to an accommodation on the basis of a disability, you must provide documentation of your disability.  To date you have not done so." *Id.* at 53.  Alexion instructed Librandi to return to the office beginning June 6, 2022, and that to work on site without being vaccinated, she must complete a weekly PCR test for COVID-19.  *Id.*  Alexion stated that failure to comply with the testing requirement would result in termination of her employment.  *Id.* at 54.

On May 31, 2022, Librandi had a meeting with Alexion's ADA compliance agents.  ECF No. 9 ¶ 57.  "She explained she was claiming her rights under the ADA and made them aware that

working from home was never her choice, rather it was isolation imposed by the company." *Id.*

Librandi received a warning because she had not submitted a PCR test. *Id.* ¶ 58.

On June 13, 2022, Librandi met with Human Resources to discuss taking a leave of absence

for medical reasons. *Id.* ¶ 59. Librandi was on medical leave from June 13, 2022 until August 22,

2022. *Id.* ¶ 61. While on leave, Librandi received a communication from Alexion stating that she

"had to attest to taking two Covid-19 antigen tests weekly up to the given deadline to become 'fully

vaccinated' through an online [form] in order to reactivate her badge so she could enter the office

building." *Id.*

In a letter dated August 11, 2022, Alexion informed Librandi, in pertinent part, that

All site-based employees are expected to report to their site regularly. Please begin reporting to your assigned site location regularly beginning … August 29, 2022. Unvaccinated employees must complete a rapid antigen test twice weekly (twice every 7 days). To enable your return to site … [on] August 29, you must conduct two tests the week of … August 22.

Once you complete your second antigen test each week, you must submit the Attestation of Completion of Required Antigen Testing[.]… Failure to test/provide attestation of testing every 7 days will result in deactivation of your badge, prohibition of in-person meetings, and may result in disciplinary action.

All employees are required to be fully vaccinated against COVID-19 unless they have requested and been granted an exemption. You have withdrawn your religious accommodation request and, therefore, no longer have an exemption to the vaccination requirement. If you would like to request an accommodation under the ADA to AstraZeneca's COVID-19 vaccine requirement, you must do so by returning the completed medical questionnaire (attached) no later than … September 5, 2022.

a. If you do not return the completed questionnaire, or if you return the questionnaire but your request is denied, you must become fully vaccinated against COVID-19. You will be required to receive at least your first vaccination dose of a two dose series or a single dose vaccination and upload documentation via the Disclosure of COVID-19 Vaccination Status form by … September 22, 2022. Fully vaccinated means you have completed the primary series of vaccination (booster shots are recommended, but not required). Employees who choose to get vaccinated using a two-dose series

5

> need to upload documentation confirming receipt of the second vaccine dose within 45 days of their first dose.
>
> If you choose to not return the medical questionnaire and choose to not get vaccinated … your employment will be terminated for Cause.

ECF No. 9-1 at 68.

On September 7, 2022, Alexion notified Librandi that she failed to comply with the testing requirement and that "[a]s a result, you are in violation of company policy regarding testing for unvaccinated individuals and, therefore, were not permitted to return to site as is required." ECF No. 9-1 at 72. Alexion asked Librandi to inform it as to whether she was going to comply with the September 22, 2022 vaccination deadline. *Id.* On September 9, 2022, Librandi responded she was "not required to disclose [her] medical information." ECF No. 9-1 at 73. She submitted an "Indemnification/Hold Harmless proposal, according to which she would be indemnified [from] any harmful outcomes [from] complying with the 'Covid-19 policy' or she would "hold defendant harmless if she did not participate in any aspect of its policy if she contracted 'Covid' while at work." ECF No. 9 ¶ 64.

On September 13, 2022, Alexion notified Librandi that it "cannot agree to either of your proposed options." ECF No. 9-1 at 75. Alexion further stated that it interpreted Librandi's email as "meaning you do not intend to comply with the September 22, 2022 deadline to receive at least your first vaccination dose of a two dose series or a single dose vaccination[.]" *Id.* Alexion asked Librandi to advise it by noon September 13 whether she intended to comply with the September 22 deadline. *Id.* Librandi responded that she was "not required to disclose [her] medical information to Alexion" and that "Alexion is prohibited from making non-job-related medical inquiries[.]" *Id.* She claimed that Alexion's actions "constitute discrimination and retaliation under the ADA." *Id.*

On September 14, 2022, Librandi had a video-call meeting with her manager and Human Resources during which Librandi was informed that her employment was terminated for cause for not intending to comply with the vaccination requirement.  ECF No. 9 ¶ 67.  See ECF No. 9-1 at 76-78 (termination letter stating "It is clear that you have no intention of complying 'in any aspect' and within any timeframe with AstraZeneca's COVID-19 vaccination mandate. As such, your employment will be terminated effective today.").

## II.     LEGAL STANDARD

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), I must determine whether the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  I accept as true all of the complaint's factual allegations when evaluating a motion to dismiss, *id*., and must "draw all reasonable inferences in favor of the non-moving party," *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co*., 517 F.3d 104, 115 (2d Cir. 2008).  However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to survive a motion to dismiss.  *Mastafa v. Chevron Corp*., 770 F.3d 170, 177 (2d Cir. 2014) (citation omitted).

Although a *pro se* complaint must be liberally construed "to raise the strongest arguments it suggests," *pro se* litigants are nonetheless required to "state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (brackets, internal quotation marks, and citations omitted).  "[A] liberal interpretation of a *pro se* civil rights complaint may not supply essential

elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021).

## III.   DISCUSSION

### A.   Count 1: ADA Discrimination

The ADA prohibits an employer from discriminating against a qualified employee on the basis of disability.  42 U.S.C. § 12112(a).  A plaintiff claiming disability discrimination under the ADA must plausibly allege that: "(1) the employer is subject to the ADA; (2) the plaintiff is disabled within the meaning of the ADA or perceived to be so by [her] employer; (3) [she] was otherwise qualified to perform the essential functions of the job with or without reasonable accommodation; (4) [she] suffered an adverse employment action; and (5) the adverse action was imposed because of [her] disability." *Davis v. N.Y.C. Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015).  The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(1).

*Regarded As*

Librandi first alleges that Alexion regarded her as disabled.

A person is "regarded as" disabled if she "establishes that … she has been subjected to an action prohibited [by the ADA] because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity."  42 U.S.C. § 12102(3)(A).  *See Stefanowicz v. Falvey Linen Supply, Inc.,* No. 3:17CV341(JCH), 2019 WL 13293202, at *4 (D. Conn. Feb. 11, 2019) ("plaintiff need only demonstrate that [defendant] regarded him as impaired, regardless of whether or not that impairment is perceived to limit a major life activity").  The "regarded as" prong "does not apply to impairments that are transitory

and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less." 42 U.S.C. § 12102(3)(B).

Librandi alleges that because she was unvaccinated and did not request an exemption from Alexion's vaccination requirement, Alexion "treated [her] either 'as if' [she] carried a specific, active, infectious disease, or 'as if' [she] had an impaired or suppressed immune system that made [her] prone to contracting 'Covid-19'. [Alexion's COVID-19] policy regarded [her] as disabled with a contagious disease with an impaired immune system." ECF No. 9 ¶ 13. *See also id.* ¶ 43 (Alexion's COVID-19 policy "regarded [plaintiff] as an infectious threat"); *id.* ¶ 97 ("The defendant's 'Covid-19 Policy' regarded the plaintiff as having 'Covid-19' or being prone to getting infected with 'Covid-19.'"); *id.* ¶ 98 ("the defendant's 'Covid-19 Policy' clearly demonstrates that the defendant sought to impose the policy's provisions upon the plaintiff based upon the pure speculation, stereotype and generalization that she was infected or may in the future become infected with a deadly, contagious disease"); ECF No. 36 at 5 ("[T]he defendant's perception is that the plaintiff actually has a contagious disease or else, a compromised immune system that makes her prone to contracting a contagious disease.") According to Librandi, Alexion's COVID-19 policy "is based upon the presumption that every employee has the same exact disability." ECF No. 36 at 12. *See* ECF No. 9 ¶ 96.

This "theory of liability has been rejected by multiple courts … around the country." *Schneider v. Cnty. of Fairfax*, 2023 WL 2333305, at *4 (E.D. Va. Mar. 2, 2023) (citing cases). In a case recently decided in this Circuit, *Sharikov v. Philips Med. Sys. MR, Inc*., 2023 WL 2390360 (N.D.N.Y. Mar. 7, 2023), the plaintiff alleged, as here, that the defendant regarded him as if he "carried a specific, active, infectious disease, or as if [he] had an impaired or suppressed immune system that made [him] prone to contracting [COVID]-19." *Id.* at *7. The plaintiff further alleged

that the defendant "regarded [him] as having '[COVID]-19' or being prone to getting infected with '[COVID]-19.'" *Id.*   The district court held that these allegations - that defendant perceived plaintiff as potentially infectious - failed to plausibly allege a claim that the defendant regarded plaintiff as having an impairment and observed that "[c]ourts have dismissed claims that employees subject to COVID-19 vaccination policies were regarded as having an impairment." *Id.* at *8 (citing cases).   As to the plaintiff's allegation that his employer perceived him as having an impairment due to COVID-19, the court held that the complaint did not contain any factual allegations that would make this assertion plausible.   *Id.* (noting plaintiff did not allege that he exhibited any symptoms of COVID-19 or that Defendant treated him as if he had symptoms of COVID-19).   And even if there were facts indicating that the defendant believed that the plaintiff had contracted COVID-19, the court noted, this, without more, was insufficient to allege a non-transitory impairment. *Id.* ("Courts have generally held that an employer perceiving a plaintiff as having COVID-19, without the plaintiff enumerating specific symptoms or long-term effects, does not constitute 'regarded as' disabled under the ADA.") (citing cases).

Similarly, in *Gallo v. Washington Nationals Baseball Club, LLC*, 2023 WL 2455678 (D.D.C. Mar. 10, 2023), the plaintiff alleged that his employer regarded him as disabled "when [it] made the 'assumption' that [he] 'could not perform his job duties' because he was unvaccinated." *Id.* at *3.   The court held that the plaintiff failed to allege a plausible disability discrimination claim because the "regarded as" prong of the ADA's definition of disability "does not cover [a] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future."   *Id.* at *4 (noting that "Every court that has considered this question has held the same.")

In *Speaks v. Health Sys. Mgmt., Inc.,* 2022 WL 3448649, at *2 (W.D.N.C. Aug. 17, 2022), the plaintiff did not seek an exemption to her employer's mandatory vaccination policy and remained unvaccinated, for which she was terminated.  The court concluded that the plaintiff failed to state a claim for disability discrimination based on having been regarded as having a disability. The court held that "there is no plausible basis to conclude that Health Systems regarded Speaks as having a 'physical or mental impairment.' The Company only regarded Speaks as being required – like all of its employees – to obtain a COVID-19 vaccine or be approved for an exemption and then 'regarded' her as having failed to do so by the deadline to become vaccinated. Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal *choice* by Speaks that, while hers to make in this context, cannot be considered an impairment under the ADA."  *Id.* at *5 (footnotes omitted).

The plaintiff in *Shklyar v. Carboline Co.,* 616 F. Supp. 3d 920 (E.D. Mo. 2022), *aff'd,* 2023 WL 1487782 (8th Cir. Feb. 3, 2023) similarly alleged that her employer regarded her as having a disability.  Here too the court concluded that the plaintiff failed to state a plausible claim:

> Carboline's COVID-19 policies were generally applicable to all of Carboline's RD&I employees….Shklyar nevertheless alleges that, by implementing its COVID-19 policies and requiring that she comply with them, Carboline regarded her as having the disability of a contagious disease and as being substantially limited with impaired immune and respiratory systems. This conclusory allegation is simply implausible in light of the general applicability of Carboline's COVID-19 policies. …[T]o infer that Carboline regarded her as having a disability would require inferring that Carboline regarded all of its RD&I employees as having a disability. This … is not a reasonable inference. Accordingly, Shklyar has also not plausibly alleged that Carboline regarded her as having a disability.

*Id.* at 926; *see also, e.g., Applegate v. St. Vincent Health, Inc.,* 2023 WL 3603975, at *3 (S.D. Ind. May 23, 2023) ("Plaintiffs' unvaccinated status cannot plausibly support a claim that Defendants regarded them as disabled under the ADA….Plaintiffs' efforts to characterize their unvaccinated status as a perceived contagiousness by Defendants is a distinction without a [difference] as

11

unvaccinated status is a proxy for contagiousness."); *West v. Scott Lab'ys, Inc.*, 2023 WL 2632210, at *4 (N.D. Cal. Mar. 24, 2023) (holding plaintiff's "'regarded as' theory - that [Defendant] perceived him as 'infected or may in the future become infected with a deadly, infectious disease'" - failed to state a claim) (citing cases); *Schneider,* 2023 WL 2333305, at *5 ("the alleged facts show that plaintiff was subject to a generally applicable policy which required him, as well as all other County employees, to disclose their vaccination status and to provide evidence of weekly testing if unvaccinated, all of which plaintiff refused to do. Plaintiff's refusal to follow his employer's requirement to report his vaccination status which led the County to treat him as unvaccinated 'is not the same as believing [he] has a physical or mental impairment.'") (citation omitted); *Johnson v. Mount Sinai Hosp. Grp., Inc.*, 2023 WL 2163774, at *5 (E.D.N.Y. Feb. 22, 2023) (rejecting plaintiff's argument that employer viewed her as having COVID-19, with an impaired immune system and respiratory system, because defendant's COVID-19 policies were applicable to all of its employees, except those with a legitimate exemption, as required by law). I concur with these decisions and find that Librandi's claim that Alexion regarded her as having a physical impairment is not plausible.

To the extent that Librandi alleges that Alexion regarded her as disabled because it regarded her as having COVID-19, ECF No. 9 ¶ 97, that claim also fails. First, the pleadings contain no factual allegations that make this claim plausible, i.e., there are no factual allegations suggesting that her employer asked about any symptoms or specifically inquired whether she had tested positive for COVID-19. Second, even if there were such allegations, the ADA claim would fail: under the ADA, individuals are not "disabled" when they have conditions that are "transitory," i.e., conditions with an actual or expected duration of six months or less, 42 U.S.C. § 12102(3)(B), and minor. Courts "generally agree that a COVID-19 infection is not a disability" because it is

"generally transitory." *Lundstrom v. Contra Costa Health Services*, 2022 WL 17330842, at *5 (N.D. Cal. Nov. 29, 2022) (collecting cases); *West*, 2023 WL 2632210, at *4 ("Federal courts have consistently held that COVID-19 is 'transitory and minor' and therefore not a disability under the ADA." (citing cases)).  "[B]ecause COVID-19 is an impairment that is considered transitory, even being regarded as having, or potentially contracting, COVID-19 is being regarded as having an impairment that is transitory—and therefore falls outside the scope of the definition of disability under 42 U.S.C. § 12102(1)(C)." *Linne v. Alameda Health Sys.*, 2023 WL 3168587, at *2 (N.D. Cal. Apr. 28, 2023).

*Record of a Disability*

Librandi next alleges that Alexion made a record of her perceived impairment.

To state a claim for disability discrimination based on a "record of" a disability, a plaintiff must plausibly allege that she has "a history of an impairment that substantially limited one or more major life activities when compared to most people in the general population, or was misclassified as having had such an impairment." 29 C.F.R. § 1630.2(k)(2).

Librandi alleges that Alexion's COVID-19 policy:

> assumes that "unvaccinated" employees who do not have a medical or religious exemption are impaired by a contagious disease and simultaneously assume[s] that they are impaired by a suppressed or weak immune system or respiratory system that makes them vulnerable to "Covid-19".  The defendant made a record of the impairment its policy is intended to treat, by documenting plaintiff's "vaccination status" (even though plaintiff refused to disclose her medical records) and via its communication, attitude and treatment of the plaintiff.

ECF No. 9 ¶¶ 128-29.  Librandi further alleges that Alexion "made a record of disability by classifying [her] as an 'unvaccinated' employee, and requiring her to self-test which led to segregating and isolating her by forcing her to work from home and terminating her employment, thus causing the loss of her income." *Id.* ¶ 131.  *See* ECF No. 36 at 7 ("plaintiff is claiming her

employer is misclassifying her[;] the method of misclassification is through gathering 'vaccine status' records.  Thus the records are of a perceived disability.")

Librandi's argument fails.  "[A] notation that Plaintiff is 'unvaccinated' does not indicate that Defendant recorded Plaintiff as having a disability."  *Linne*, 2023 WL 3168587, at *2.  *See Johnson*, 2023 WL 2163774, at *4 ("[o]ther courts have rejected this argument, with good reason" and stating that an employer does not misclassify employees "merely by requiring them to be vaccinated"); *Jorgenson v. Conduent Transp. Sols., Inc*., 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (dismissing plaintiff's claim that defendant "'mis-classified' him as unvaccinated 'and made a record of impairment by imposing its [attestation] policy upon plaintiff.'… [because] Plaintiff has alleged no facts indicating that [defendant] classified him as having any impairment that limits a major life activity."); *Speaks,* 2022 WL 3448649, at *5 ("inferring that the Company classified [the plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [the defendant] considered all its employees to have an 'impairment,' which is of course not a plausible inference, particularly in light of the possibility of an exemption."); *Shklyar*, 616 F. Supp. 3d at 925-26 ("[Plaintiff's] amended complaint show[s] that [her employer] classified [her] in the same way that it classified all of its RD & I employees. Inferring that [the employer] misclassified [plaintiff] as having a disability would therefore require inferring that [the employer] misclassified all of its RD & I employees as having a disability. Such an inference is not reasonable. As a result, Shklyar has not plausibly alleged that Carboline misclassified her as having a disability, and she cannot proceed under a theory of being disabled based on a record of a disability.").

**B.      Count 2 - Retaliation**

To state a claim for retaliation under the ADA, a plaintiff must allege that: "(1): [s]he

engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took an adverse employment action against [her]; and (4) a causal connection exists between the alleged adverse action and the protected activity."  *Caskey v. Cnty. of Ontario*, 560 Fed. App'x 57, 58 (2d Cir. 2014) (quotation marks and citation omitted).

Librandi alleges that she informed Alexion "that she was regarded as having a disability," and "upon claiming her rights to refuse the defendant's accommodations based upon her good faith opposition, she engaged in a protected activity."  ECF No. 9 ¶ 135.  Librandi further alleges that Alexion "retaliated by seeking to impose its 'COVID-19 Policy' upon the plaintiff in violation of its bona fide legal duty of care under the ADA."  *Id.* ¶ 156. According to Librandi, she "engaged in the protected activity of refusing in good faith to participate in [Alexion's] 'COVID-19' policy," each time she "exercised her right to refuse, the defendant undertook adverse employment actions," and Alexion terminated her employment "as a direct and proximate cause of her refusal to participate in the defendant's 'COVID-19' Policy."  *Id.* ¶¶ 175-76, 179.

Librandi points to no authority in support of her assertion that her refusal to comply with her employer's policy was "protected activity."  But even assuming that it was, Librandi has failed to plausibly allege causation between her allegedly protected conduct and her termination.  The Plaintiff's factual allegations and the materials attached to her complaint do not suggest that Librandi was terminated for objecting to Alexion's COVID-19 policy; rather, they suggest that she was terminated because she failed to comply with it.  See ECF No. 9-1 at 76-78 (termination letter stating "It is clear that you have no intention of complying 'in any aspect' and within any timeframe with AstraZeneca's COVID-19 vaccination mandate. As such, your employment will be terminated effective today.").  Librandi alleges no facts suggesting that Alexion would have refrained from terminating her had she never mentioned the ADA but still refused to comply with

its COVID-19 policy; nor does she allege any facts suggesting that Alexion would have terminated her had she opposed the policy under the ADA but nonetheless complied with it.  In addition, courts faced with this precise claim have concluded that causation is not plausibly alleged where the Defendant's COVID-19 policy - "which was undisputedly the grounds for [Plaintiff's] termination when [she] chose to remain unvaccinated - was enacted *before* [Plaintiff] spoke up in opposition to the vaccination requirement," as is the case here.  *Speaks*, 2022 WL 3448649, at *6. *See Sharikov,* 2023 WL 2390360, at *14 ("Defendant's COVID-19 policy was in place as of October 27, 2021…. Plaintiff's first alleged protected activity was on November 16, 2021.… Thus, Plaintiff fails to allege a plausible retaliation claim based on his February 4[, 2022] termination.") (citing cases); *Johnson*, 2023 WL 2163774, at *7 (dismissing retaliation claim on the grounds that "[w]hile the plaintiff's refusal to comply with the defendant's COVID-19 policies was clearly the basis for her termination, the defendant adopted its policies before the plaintiff objected to vaccinations and masking"); *Lundstrom,* 2022 WL 17330842 at *6-7 ("Because [defendant's] COVID-19 mitigation and vaccination policies existed before Lundstrom opposed those policies, it is not reasonable to infer that there was a causal connection"); *Linne,* 2023 WL 3168587, at *3 (dismissing plaintiff's retaliation claim because plaintiff alleged no facts to show that "Defendant's communications with and termination of Plaintiff were anything other than its enforcement of a policy, in place before Plaintiff opposed it, that applied equally to all employees.")

## C.    Other claims

Although not set forth as separate counts in the complaint, Librandi alleges that Alexion took various "prohibited actions" under the ADA.

**Medical inquiries and examinations.**  Librandi alleges that Alexion violated the ADA by making non-job-related inquiries and requiring medical examinations.  ECF No. 9 ¶¶ 99, 141. She

also alleges that Alexion's COVID-19 policy improperly required her to disclose her medical information such as vaccination status in violation of 29 C.F.R. § 1630.13(b).  ECF No. 9 ¶¶ 100, 101.

The ADA provides:

(A) Prohibited examinations and inquiries
A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.
(B) Acceptable examinations and inquiries
A covered entity may conduct voluntary medical examinations, including voluntary medical histories, which are part of an employee health program available to employees at that work site. A covered entity may make inquiries into the ability of an employee to perform job-related functions.

42 U.S.C. § 12112(d)(4).

29 C.F.R. § 1630.13(b) provides: "Except as permitted by § 1630.14, it is unlawful for a covered entity to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability."

The ADA does not forbid all medical inquiries, but only those "as to whether such employee is an individual with a disability or as to the nature or severity of the disability." *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 95 (2d Cir. 2003).

Librandi alleges that Alexion's "COVID-19 policy imposed certain non-job related medical inquires" including disclosing private medical records and medical history.  ECF No. 9 ¶ 101.  The policy also "imposed submitting" to COVID-19 testing and "non-job-related medical treatments including but not limited to: taking experimental vaccines; wearing a surgical mask over the face; engaging in 'social distancing' which is a euphemism for quarantine and isolation."  *Id.* ¶ 103.

None of these allegations amount to a plausible claim that Alexion conducted a medical examination or an inquiry about a disability.  *See Sharikov*, 2023 WL 2390360, at *15 ("Plaintiff

has not alleged facts plausibly suggesting that a vaccine attestation, an inquiry regarding whether he had contact with any infectious people, COVID-19 testing, and daily temperature screenings are inquiries or medical examinations that 'would reveal disabilities.'") (some internal quotation marks omitted; citing cases); *Chancey v. BASF Corp.*, 2022 WL 18438375, at *4 (S.D. Tex. Dec. 29, 2022) (Plaintiff's claims that his employer required him to submit to weekly COVID-19 testing, imposing distance requirements, and masking did not constitute disability-related inquiries or medical examinations). Requiring Librandi to disclose her COVID-19 vaccination status does not run afoul of the ADA. *See Friend v. AstraZeneca Pharms. LP*, 2023 WL 3390820, at *5 (D. Md. May 11, 2023) ("AstraZeneca's inquiry about vaccination status, however, did not constitute a medical examination or an inquiry about a disability or disabling condition."); *Jorgenson,* 2023 WL 1472022, at *11-12 (finding no violation of § 1630.13(b) where defendant required plaintiff to attest to whether he received the COVID-19 vaccine because the "attestation requirement did not constitute a medical examination or an inquiry about a disability").

**Legality of COVID-19 Vaccination Requirement.**  Librandi asserts that Alexion lacked authority to require its employees to be vaccinated.  ECF No. 9 ¶¶ 79-80.  See ECF No. 36 at 19 ("Defendant does not have the legal authority to compel vaccination.")  Apart from being irrelevant to her ADA claim, this assertion is incorrect: Librandi cites no authority that would generally prohibit a private employer from requiring its employees to be vaccinated.

EEOC COVID-19 guidance, to which Librandi refers in her opposition, see ECF No. 36 at 19 n.8, unequivocally states that the ADA does not preclude an employer from requiring all employees to be vaccinated against COVID-19, subject to reasonable accommodations for employees with disabilities or sincerely held religious beliefs that preclude vaccination. See "What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws."

EEOC, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* (updated May 15, 2023), *available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws* (last accessed May 25, 2023).

**Individualized Assessment**.  Librandi alleges that Alexion failed to perform its duty under the ADA of performing an objective and individualized assessment prior to demanding she undergo treatment in violation of 29 C.F.R. § 1630.2(r).  ECF No. 9 at ¶¶ 15, 121.  That regulation provides in pertinent part:

> The determination that an individual poses a "direct threat" shall be based on an individualized assessment of the individual's present ability to safely perform the essential functions of the job. This assessment shall be based on a reasonable medical judgment that relies on the most current medical knowledge and/or on the best available objective evidence. In determining whether an individual would pose a direct threat, the factors to be considered include:
> (1) The duration of the risk;
> (2) The nature and severity of the potential harm;
> (3) The likelihood that the potential harm will occur; and
> (4) The imminence of the potential harm.

29 C.F.R. § 1630.2(r).

The ADA provides that "[i]t may be a defense to a charge of discrimination [under the ADA] that an alleged application of qualification standards … that tend to screen out or otherwise deny a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished by reasonable accommodation."  42 U.S.C. § 12113(a).  It goes on to say, "[t]he term 'qualification standards' may include a requirement that an individual shall not pose a direct  threat to the health and safety of other individuals in the workplace."  *Id.* § 12113(b).  The regulation on which Librandi relies is an interpretation of the "direct threat" provision.  This regulation is inapplicable, however, because Librandi has failed to allege facts showing that she is "an individual with a disability."  In other

words, it does not matter whether Alexion can sustain its burden of establishing an affirmative

defense that Librandi was a "direct threat," because she has failed to plead a cognizable ADA

claim.  Affirmative defenses are considered only after the plaintiff has pled a plausible claim.  *See*

*Linne*, 2023 WL 3168587, at *1  ("Whether any of th[e] three prongs [in the disability definition]

is satisfied is a threshold inquiry that determines whether Plaintiff falls under the scope of the ADA

at all, and necessarily antecedent to other questions or analyses" including "the inquiry of whether

an individualized assessment was conducted to determine whether Plaintiff posed a direct threat.");

*Sharikov*, 2023 WL 2390360, at *17 (finding plaintiff's reliance on "individualized assessment"

language from 29 C.F.R. § 1630.2(r) misplaced because the provision was not relevant in light of

the fact that she had not plausibly alleged that she was covered by the statute).

### D.      Leave to Amend

*Pro se* complaints should generally be given leave to amend when there is "any indication

that a valid claim might be stated."  *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002).  Leave

to amend, however, need not be granted when amendment would be futile. *Terry v. Inc. Vill. of*

*Patchogue,* 826 F.3d 631, 633 (2d Cir. 2016).  Librandi cannot plausibly allege that her employer's

COVID-19 policy or her termination violated the ADA. Further amendment concerning a claim

under the ADA would be futile.[3]

### IV.     CONCLUSION

For the foregoing reasons, Alexion's motion to dismiss (ECF No. 26) is GRANTED and

the claims are dismissed with prejudice.  The Clerk of the Court is instructed to enter judgment

---

[3] Defendant filed a *pro se* notice required by Local Rule 12, ECF No. 27, but not copies of Fed. R. Civ. P. 12 or Local Rule 7.  Nonetheless, as Librandi filed a timely response to the motion and no amount of more scrupulous compliance with those rules would enable to the plaintiff to plead a plausible claim, I decline to refrain from dismissing Librandi's complaint based on this minor technical defect in the defendant's motion.  I also note that the plaintiff was twice informed that she could amend her complaint – again – upon the defendant's filing of its motion; once by the court (see ECF No. 30) and once by the defendant in the Notice (see ECF No. 27).

and close the case.

IT IS SO ORDERED.


_____/s/_____
Michael P. Shea, U.S.D.J.

Dated:        Hartford, Connecticut
              June 14, 2023